UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FALCONPOINT UNLIMITED, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>KEVIN J. SENN, SENN LAW,<br>RANDOLPH MCCONVILLE, and<br>MONA MCCONVILLE,<br><br>    Defendants. | Case No. 14-cv-02342 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

The Court considers Falconpoint's motion for partial summary judgment on its breach of contract claims for repayment of a pre-settlement funding loan. Falconpoint's predecessor entered into a contract with the McConvilles, Senn, and Senn Law to provide an advance of $136,820, with a $53,217 administrative fee, to fund litigation in a separate case. Repayment on the advance was contingent upon the McConvilles recovering money in the lawsuit, which they did. However, Falconpoint was never repaid the advance or any of the 4% monthly compounded interest. Because the Court finds that there is no material dispute of fact that the contract was breached, the Court GRANTS summary judgment against all defendants in the value of the advance. However, the defendants have presented a dispute of fact as to whether the interest on the advance is usurious in violation of California law. Therefore, the Court DENIES summary judgment as to the damages of the breach of contract claims above $136,820.

Case No. 14-cv-02342 NC

## I. BACKGROUND

### A. Undisputed Facts

On April 26, 2013, Randy and Mona McConville, Kevin Senn, and Senn Law entered into a pre-settlement funding contract with Woodbridge Baric Pre-Settlement Investments, LLC ("Woodbridge"). Dkt. No. 28, Salvato Decl. at Exh. A. The contract provided that the McConvilles received a $136,820.00 advance from Woodbridge in connection with a lawsuit between the McConvilles and a third party. *Id*. In addition, the McConvilles paid an administrative fee of $53,217.00. *Id.* at ¶ 2. In exchange, if the McConvilles recovered money in the underlying lawsuit, the defendants were required to repay Woodbridge the advance plus interest. *Id.* at ¶ 2. The contract provided that interest accrues at 4% monthly compound interest rate, on both the advance and administrative fee. *Id.* at ¶ 4. In the event that the McConvilles did not receive monetary recovery in the underlying suit, they were not obligated to repay Woodbridge for the advance. *Id.* at ¶ 3. Kevin Senn and his law firm, Senn Law, represented the McConvilles in the underlying case and signed onto the pre-settlement funding contract. *Id.* at 15-16. Specifically, Senn agreed that he would pay Woodbridge the amount owed by the McConvilles before making any distribution of funds to his client. *Id.* at 15 (Acknowledgement by Kevin Senn of Senn Law).

The McConvilles were successful in their underlying lawsuit, recovering $865,000 in a settlement on October 8, 2013. Dkt. No. 31-1, Senn Decl. ¶ 6. Woodbridge Baric did not receive any of the settlement money from the defendants. Dkt. No. 28, Salvato Decl. ¶ 4. On April 28, 2014, Woodbridge Baric assigned its rights under the contract, and right to repayment from defendants, to Falconpoint Unlimited, LLC. Dkt. No. 28, Salvato Decl. at Exh. B.

### B. Procedural History

Falconpoint Unlimited, LLC sued the McConvilles, Senn, and Senn Law, on May 20, 2014, for fraud and breach of contract. Dkt. No. 1. Falconpoint's second cause of action is for breach of contract as to the McConvilles, while its third cause of action is for

Case No. 14-cv-02342 NC          2

1  breach of contract as to Senn and Senn Law.[1]  *Id.*  Falconpoint seeks to recover the value
2  of the advance, administrative fee, and the 4% monthly compounded interest.  *Id.*  On
3  October 3, 2014, Falconpoint moved for partial summary judgment on the breach of
4  contract claims, and on Senn's defense of usury.  Dkt. No. 26.  Senn filed an opposition to
5  the summary judgment motion on behalf of himself, Senn Law, and the McConvilles.  Dkt.
6  No. 31.  Prior to the hearing, the Court issued an order to show cause why Senn should not
7  be disqualified from representing the McConvilles in this action.  Dkt. No. 42.  In
8  response, Senn requested a stay of the proceedings while the McConvilles considered
9  alternate counsel, which the Court granted.  Dkt. Nos. 42, 44.

10  Once the McConvilles obtained alternate counsel, the Court lifted the stay, and
11  postponed the summary judgment briefing until after further fact and expert discovery.
12  Dkt. No. 51.  The Court then permitted the McConvilles and Senn each an opportunity to
13  oppose the motion for summary judgment anew.  Dkt. No. 51.  The McConvilles opposed
14  the motion separately, Dkt. No. 53, but Senn did not.  The Court gave Senn a further
15  opportunity to respond, and at that time, Senn filed an opposition.  Dkt. Nos. 57, 58.  On
16  August 5, 2015, the Court held a hearing on the partial summary judgment motion.
17  Falconpoint and the McConvilles' counsel were present, but Senn was not.  Dkt. No. 59.
18  At the hearing, the McConvilles requested leave to file a cross-claim, which the Court
19  granted.  *Id.*  The Court separately set forth a briefing schedule to consider the cross-claim,
20  Dkt. No. 64.

## II.  LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under

---

[1] Senn is representing both himself and his law firm with the same briefing and defenses, so both entities will be collectively referred to as "Senn" in this order.

Case No. 14-cv-02342 NC            3

governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

### III. DISCUSSION

#### A. Breach of Contract

As this is a diversity action, the Court first considers which law applies to the breach of contract claims. "It is well-settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state." *Estate of Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir. 2005). Under California's choice-of-law rule, California law applies unless a party objects. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974); *PlasPro GMBH v. Gens*, No. 09-cv-04302 PSG, 2011 WL 1000755, at *3 (N.D. Cal. Mar. 21, 2011). Additionally, the law of the place of contracting determines the enforcement and validity of the contract. Restatement (First) of Conflict of Laws § 332 (1934). Here, all parties assume that California law applies to the contract. Dkt. Nos. 26, 53, 58. Additionally, the complaint asserts that the transactions at issue took place in substantial part in California. Dkt. No. 1 at ¶ 14. Therefore, the Court applies California law to the contract.

Case No. 14-cv-02342 NC     4

1  Under California law, a breach of contract claim requires plaintiff to prove "the
2  existence of contract, plaintiff's performance of that contract or excuse for failure to
3  perform, defendant's breach, and damage to plaintiff resulting therefrom." *McKell v.*
4  *Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (citing 4 Witkin, Cal.
5  Procedure (4th ed. 1997) Pleading, § 476 at 570).
6  First, no party disputes the existence of a contract. Dkt. No. 28, Exh. A; Dkt. No.
7  55, McConville Decl. ¶ 2; Dkt No. 58-1, Senn Decl. ¶ 2. Plaintiff has provided the
8  contract entered into between Woodridge Baric on the one hand and Randolph
9  McConville, Mona McConville, Kevin Senn, and Senn Law, on the other hand. Dkt. No.
10 28 at Exh. A.
11 Second, no party disputes that plaintiff performed under the contract by providing
12 the $136,820.00 advance to the McConvilles. Dkt. No. 55, McConville Decl. ¶ 2; Dkt. No.
13 58-1, Senn Decl. ¶ 2.
14 Third, no party disputes that the McConvilles recovered money in their prior
15 lawsuit, and thus, owed Woodridge repayment. Dkt. No. 55, McConville Decl. ¶ 6; Dkt.
16 No. 58-1, Senn Decl. ¶ 3. Additionally, no party disputes that the money was not received
17 by Woodridge. Dkt. No. 28, Salvato Decl. ¶ 4. Therefore, there was a breach by the
18 defendants.
19 Fourth, no party disputes that Woodridge was damaged in at least the amount of the
20 advance because it did not receive the money owed under the contract. Dkt. Nos. 53, 58.
21 Therefore, the Court GRANTS summary judgment on the breach of contract claims
22 against all defendants for the value of the advance. *See Blue Growth Holdings Ltd. v.*
23 *Mainstreet Ltd. Ventures, LLC*, No. 13-cv-1452 CRB, 2013 WL 4758009, at *2 (N.D. Cal.
24 Sept. 4, 2013) (finding summary judgment appropriate on a breach of contract claim
25 because plaintiff had not been repaid the loan amount, and determining that "the usury
26 defense concerns the amount and not the existence of damages."); *see also Strike v. Trans-*
27 *West Discount Corp.*, 92 Cal. App. 3d 735, 744 (1979) (finding a contract usurious, but
28 still subject to a breach of contract claim and an award of the legal interest rate).

Case No. 14-cv-02342 NC                5

United States District Court
Northern District of California

**B.  McConvilles' Defense**

The McConvilles defend that they should not be held liable for breaching the contract because they assigned their rights to Senn and Senn Law to perform the transfer of funds to plaintiff.  Dkt. No. 53.  The McConvilles point to their authorization directing Senn to remove the advance funds from the award before providing the McConvilles with the remaining balance.  Dkt. No. 28 at 13.  According to the McConvilles, they believed that Senn removed his attorneys' fees and the advance value before providing them the remaining settlement money.  Dkt. No. 55, McConville Decl. ¶ 6.  It is unclear whether the McConvilles actually received the funds owed to Falconpoint from Senn, or whether Senn kept the funds.  Regardless, the contract provides that all defendants are party to the contract's terms, which requires defendants to repay Falconpoint for the advance, interest, and administrative fee.  Dkt. No 28, Exh. A.  The McConvilles accepted the advance, and signed all pages of the contract with their initials.  Dkt. No. 28, Exh. A.  Additionally, paragraph 4 of the contract states that the McConvilles "will not receive any money from the proceeds of the Lawsuit/Claim until Woodbridge Baric has been paid in full."  Dkt. No. 28, Exh. A.  Therefore, the Court concludes that the McConvilles' obligation under the contract was to repay Woodbridge the value of the advance and administration fee, plus interest, if they recovered money in the underlying lawsuit.

Under California law, "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several."  Cal. Civ. Code §1659.  Additionally, California Civil Code § 1660 states, "A promise, made in the singular number, but executed by several persons, is presumed to be joint and several."  *See also, DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 820 (2015), reh'g denied (Aug. 12, 2015) (finding that parties jointly and severally liable for a contract are liable for the entire loss and can be sued separately for the entire loss).

Therefore, the Court concludes that the McConvilles are jointly and severally liable for the advance repayment value of $136,820.  The McConvilles have requested leave to

Case No. 14-cv-02342 NC                6

1  file a cross-claim, and the Court finds that this is the appropriate avenue to evaluate their
2  defense to liability. The Court has already set forth a schedule for briefing on the motion
3  for cross-claim. Dkt. No. 64.

### C. Senn's Usury Defense

Senn and Senn Law do not dispute that the value of the advance is owed to plaintiff. Dkt. No. 58. However, Senn argues that the interest rate provided for in the original contract is unlawful under California law. Dkt. No. 58. Falconpoint moves for summary judgment on this defense as well. Dkt. No. 26. Senn argues that the contract is usurious, and therefore, interest at the rate provided for in the contract is invalid. Additionally, Senn argues that the intent element of the usury defense is a question of fact and should be left to a jury. Dkt. No. 59.

The California Constitution provides for a maximum annual interest rate of seven percent on loans and forbearances, but allows parties to set up to a ten percent interest rate on loans involving real property by written contract. Cal. Const. art. XV § 1. A loan that violates the constitutional maximums is considered usurious. *WRI Opportunity Loans II LLC v. Cooper*, 65 Cal. App. 4th 205, 212 (2007). "California's usury law imposes virtually strict liability on lenders." *In re Dominguez*, 995 F.2d 883, 886 (9th Cir. 1993), *as amended on denial of reh'g* (July 8, 1993).

Under California law, "[t]he essential elements of . . . usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *WRI Opportunity Loans*, 65 Cal. App. 4th at 212. Intent, in the context of usury, is satisfied by the intent to accept payment in excess of the legal rate; a conscious intent to evade the law is not required. *Id.* Intent in regard to usury is a question of fact. *Id.* If a loan is found to be usurious, the lender may not collect interest. *Strike*, 92 Cal. App. 3d at 744 .

Here, no party disputes that the 4% monthly compounded interest exceeds the statutory maximum. Dkt. No. 26. According to the repayment chart in the contract, the

Case No. 14-cv-02342 NC            7

effective APR after the first year of the advance is 62.43%.  Dkt. No. 28 at 20.  Additionally, the Court agrees that the intent element of usury presents a question of fact, counseling against summary judgment in favor of the plaintiff.  However, Falconpoint argues that the contract is an interest contingent contract because the advance was not absolutely repayable, so it is not usurious.  Dkt. No. 26 at 5.

### a. Interest Contingency Rule

One exception to the usury law is the "interest contingency rule" which provides that "interest that exceeds the legal maximum is not usurious when its payment is 'subject to a contingency so that the lender's profit is wholly or partially put in hazard,' provided 'the parties are contracting in good faith and without the intent to avoid the statute against usury.'"  *WRI Opportunity Loans*, 154 Cal. App. 4th at 212 (quoting *Lamb v. Herndon*, 97 Cal. App. 193, 301 (1929)).

The risk required must be "something over and above the risk which exists with all loans . . . that the borrower will be unable to pay."  *Thomassen v. Carr*, 250 Cal. App. 2d 341, 346-49 (1967).  To assess the risk, courts look beyond the face of the agreement and consider the substance of the transaction.  *Id.* at 347; *Teichner v. Klassman*, 240 Cal. App. 2d 514, 516-18 (1966).

Here, the contract provides that the defendants would only repay the advance if they recovered money in their litigation.  Dkt. No. 26, Exh. A, Salvato Decl. ¶ 2.  According to Falconpoint, this is sufficient to demonstrate the defense of usury does not apply.  Senn argues that (1) the interest contingency rule does not apply because parts of the contract were absolutely repayable; and (2) Woodbridge Baric did not assume the requisite risk to assert the income contingency exception.  Dkt. No. 58.

First, the Court finds that the interest contingency rule is not a bar to Senn's usury defense.  The contract provides that only the repayment of the advance is contingent upon the McConvilles' monetary recovery.  Dkt. No. 28 at ¶ 3.  However, the contingency does not apply to (1) the $53,217.00 administrative fee, or (2) the interest on the advance and administrative fee.  Dkt. No. 28 at ¶ 3.  The contract specifically defines the "advance" as

Case No. 14-cv-02342 NC            8

only the $136,820.00 provided to the McConvilles. Dkt. No. 28 at ¶ 1. This term does not include the interest or administrative fee, which are referred to separately in all parts of the contract. Dkt. No. 28 at ¶¶ 2, 4. Thus, plaintiff's argument that the contract fits within the interest contingent exception to usury does not succeed as a matter of law. *See Strike*, 92 Cal. App. 3d at 744 (finding that interest rates can be usurious on only part of a loan or contract, while lawful on another part).

Second, drawing all inferences in favor of the defendants, the Court finds that there remains a material issue of fact as to the degree of risk Woodbridge assumed in entering the pre-settlement loan contract. In support of his argument, Senn points to Woodbridge's extensive investigation into the strengths and weaknesses of the McConvilles' case. Dkt. No. 58 at Senn. Decl. Senn declares that Woodbridge investigated the case file materials, inquired into the financial status of the defendants, viewed the defendants' expert reports, and received all of plaintiff's medical files regarding the injuries in question. Senn. Decl. ¶¶ 4-7. Senn argues that Woodbridge was able to determine, based on its extensive investigation, that the McConvilles were nearly certain to be successful in their underlying case. Dkt. No. 58. According to Senn, Woodbridge, and now Falconpoint, did not take the risk necessary to avail itself of the income contingency exception to usury.

In summary, the Court agrees that taking all inferences in favor of the defendants, there remains a material issue of fact as to whether the contract is usurious and whether the interest contingency rule applies. Thus, the Court concludes that summary judgment cannot be granted in favor of the plaintiff as to damages for the breach of contract above the $136,820.00 advance, or on the usury defense. *See Blue Growth Holdings Ltd. v. Mainstreet Ltd. Ventures, LLC*, No. 13-cv-1452 CRB, 2013 WL 4758009, at *2 (N.D. Cal. Sept. 4, 2013).

////

## IV. CONCLUSION

The Court GRANTS summary judgment as to the breach of contract claims for the value of the advance, $136,820.00 jointly and severally against all defendants, but DENIES summary judgment on the usury defense and the amount of damages beyond the advance value. Therefore, the remaining issues for trial are:

1. First Cause of Action- Fraud against all defendants
2. Second Cause of Action- Breach of contract against the McConvilles, for the value of damages beyond $136,820.
3. Third Cause of Action- Breach of contract against Senn and Senn law, for the value of damages beyond $136,820.

The Court notes that no trial is presently scheduled in this case. Federal Rule of Civil Procedure 1 requires the "just, speedy, and inexpensive" determination of all civil actions and proceedings. The Court is sensitive that this case was filed over one year ago, and that interest on the underlying advance may continue to accrue while this action is pending. Therefore, on October 7 at 1:00 p.m., the Court will hold a case management conference to set a further case schedule in the San Francisco Courthouse, Courtroom D. The parties must meet and confer and submit a joint case management statement by September 30 with proposed dates through trial. The Court suggests a January 11, 2016, trial date. The parties should agree to this date, or explain why the case cannot be ready for trial by January 2016.

**IT IS SO ORDERED.**

Dated: September 4, 2015

_____
NATHANAEL M. COUSINS
United States Magistrate Judge